IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| DOUGLAS FROHLICH<br>on behalf of Plaintiff and a class, | )<br>)<br>) |
| Plaintiff, | )<br>) |
| vs. | )<br>) |
| GREATPLAINS FINANCE, LLC<br>d/b/a CASH ADVANCE NOW;<br>NEWPORT FUNDING, LLC;<br>and JOHN DOES 1-20, | )<br>)<br>)<br>)<br>) |
| Defendants. | )<br>) |

## COMPLAINT – CLASS ACTION

## MATTERS COMMON TO MULTIPLE COUNTS

### INTRODUCTION

1. Plaintiff Douglas Frohlich brings this action to secure redress from predatory and unlawful loans made by Defendant GreatPlains Finance, LLC d/b/a Cash Advance Now, financed by Defendant Newport Funding, LLC; and involving Defendants John Does 1-20.

2. Plaintiff seeks a declaratory judgment that the loans are void and an injunction against their collection (Count I), damages pursuant to the Illinois Interest Act, 815 ILCS 205/6 (Count II), damages and injunctive and declaratory relief pursuant to the Illinois Predatory Loan Prevention Act, 815 ILCS 123/15-1-1 et seq., and the Illinois Consumer Fraud Act, 815 ILCS 505/1 et seq. (Count III – the Predatory Loan Prevention Act provides that violations are a violation of the Illinois Consumer Fraud Act), and treble damages under RICO (Count IV).

### JURISDICTION AND VENUE

3. This Court has subject matter jurisdiction under:

    a. 18 U.S.C. §1964 (RICO),

    b. 28 U.S.C. §1331 (general federal question),

    c. 28 U.S.C. §1367 (supplemental jurisdiction),

1

    d.  28 U.S.C. § 1332(d) (Class Action Fairness Act). Plaintiff and Defendants are citizens of different states; there are more than 100 members of the classes (as defined herein); and the aggregate amount in controversy exceeds $5 million, exclusive of attorneys' fees, interest and costs.

  4.  This Court has personal jurisdiction over each Defendant because they:

    a.  Knowingly participated in the making and collection of unlawful loans to Illinois residents. In similar actions against purported "tribal" lenders, courts have held that personal jurisdiction over the persons involved in making the loans exists in the state where the borrower obtained a loan via the Internet, and in which loan funds were disbursed via ACH transfer. *Gingras v. Rosette*, 5:15cv101, 2016 U.S. Dist. LEXIS 66833, 2016 WL 2932163, at *2-3, *9 (D. Vt. May 18, 2016), *aff'd sub nom. Gingras v. Think Fin., Inc.*, 922 F.3d 112 (2d Cir. 2019) (finding that tribal lending entity's contacts with Vermont "would have been sufficient to subject [the tribal entity] to personal jurisdiction in Vermont" for purposes of claims for violations of state and federal law, including state usury laws and RICO, where tribal entity operated a website that advertised loans in Vermont, sent emails and loan applications to Vermont consumers and transferred loan principal to consumers' Vermont bank accounts); *Duggan v. Martorello,* 18cv12277, 2022 U.S. Dist. LEXIS 58075, at *33-34, 2022 WL 952183 (D. Mass. Mar. 30, 2022); *Dawkins v. Blue Dart Ventures*, 8:20cv2353, 2021 U.S. Dist. LEXIS 130297 (M.D. Fla. Apr. 1, 2021).

    b.  Selected which states to offer loans in, thereby targeting those states. *Illinois v. Hemi Group, LLC,* 622 F.3d 754, 760 (7th Cir. 2010).

  5.  Venue is proper because acts to obtain and collect the loans impacted Plaintiff in the Northern District of Illinois.

  6.  Article III of the Constitution of the United States is satisfied because actions for statutory damages and invalidation of loans for usury were entertained by the courts of England and the United States in 1787. English Usury Act of 1713, 12 Anne Session 2 c. 17. All thirteen original American states replaced the English usury statutes with their own usury laws between 1641 and

1791. Christopher L. Peterson, *Usury Law, Payday Loans, and Statutory Sleight of Hand: Salience Distortion in American Credit Pricing Limits*, 92 Minnesota Law Review 1110, 1116-18 (April 2008), summarizing statutes allowing 5% to 8% interest.

## PARTIES

### Plaintiff

7. Plaintiff Douglas Frohlich is a citizen of Illinois and a resident of Cook County, Illinois.

### Defendants

8. Defendant GreatPlains Finance, LLC d/b/a Cash Advance Now is an online lender that offers loans to consumers at annual percentage rates above 500%. It purports to be an entity formed under the laws of the Fort Belknap Indian Community of the Fort Belknap Reservation of Montana ("Tribe"), a federally-recognized Indian Tribe.

9. Defendant GreatPlains Finance, LLC d/b/a Cash Advance Now ("GPF") uses the address P. O. Box 569, Hays, MT 59527.

10. GPF also uses the address 353 Old Hays Road, Hays, MT 59527, which is also associated with Fort Belknap Planning and Development Corporation, d/b/a Island Mountain Development Group ("IMDG").

11. GPF claims to be a "tribal entity" entitled to sovereign immunity.

12. To determine if a particular entity is entitled to sovereign immunity, the majority of courts have adopted the framework laid out in *Breakthrough Mgmt. Grp., Inc. v. Chukchansi Gold Casino & Resort*, 629 F.3d 1173, 1183 (10th Cir. 2010), which analyzed "(1) [the entities'] method of creation; (2) their purpose; (3) their structure, ownership, and management, including the amount of control the tribe has over the entities; (4) whether the tribe intended for the entities to have tribal sovereign immunity; (5) the financial relationship between the tribe and the entities; and (6) whether the purposes of tribal sovereign immunity are served by granting immunity to the entities." *Breakthrough* at 1183, 1187-88.

13. GPF has been held not to be entitled to immunity under this test. *Ransom v. GreatPlains Fin., LLC*, 2:22cv1344, 2024 U.S. Dist. LEXIS 10651, 2024 WL 228432 (D.N.J. Jan. 22, 2024), reconsideration denied, 2024 U.S. Dist. LEXIS 70794 (D.N.J., Apr. 18, 2024).

14. The sole manager of GPF is Fort Belknap Planning and Development Corporation, d/b/a IMDG.

15. On November 23, 2021, GPF obtained a $10 million loan from various non-tribal lenders acting under the administrative agent Defendant Newport Funding, LLC ("NF") pursuant to a Loan Agreement. NF managed the loan on behalf of the lenders.

16. Defendant NF is a limited liability company organized under Delaware law. Its registered agent and office is The Corporation Trust Company, 1209 Orange St., Wilmington DE 19801.

17. Defendant NF provides funds for the making of the loans at issue.

18. GPF designated Aaniiih Nakoda Servicing, LLC, a tribal entity, as master servicer and Carmel Solutions, LLC, ("Carmel") a non-tribal entity, as backup servicer, pursuant to a Master Services Agreement.

19. The NF Loan Agreement provides that certain "Adverse Tribal Actions" constitute default on the loan including: increasing or imposing any taxes, levy, charge or other payment obligation; amending the tribal laws in a manner that would be materially adverse to the lenders; restricting or eliminating the right of any borrower to conduct its business in a manner that would be materially adverse to the lenders.

20. GreatPlains Finance, LLC is required under the Loan Agreement to first make payments to NF and Carmel before paying any tribal entities.

21. GreatPlains Finance, LLC's payments to NF include: an upfront fee of $100,000 to obtain financing; a monthly audit fee of $2,500 regardless of when any audits actually occur; 21% interest per annum on any outstanding loan balance; and a "facility fee" calculated based on the loan amount.

22. GreatPlains Finance, LLC also must pay Carmel service fees of $4,500 per month and 3.5% on all unpaid balances on accounts.

23. On January 19, 2023, the Tribe's elected governing body (the "Tribal Council"), replaced the IMDG Board after discovering alleged financial mismanagement.

24. On January 20, 2023, NF declared an Event of Default and asserted the exercise of "immediate control" over GPF's financial accounts "until such time as [NF], in its sole discretion, has determined the Event of Default cured."

25. NF directed financial institutions to "prevent the withdrawal, transfer, disposition of, or the exercise of any other form of dominion or control over associated Collateral without [NF's] prior written consent."

26. During the continuation of an Event of Default, the NF Loan Agreement gives NF the Power of Attorney to, inter alia: indorse GPF's name "upon any and all checks, drafts, money orders and other instruments for the payment of money," execute in GPF's name any financing statements, amendments and schedules thereto that GPF is obligated to execute, or "do such other and further acts and deeds" in GPF's name that NF deems necessary to "make, create, maintain, continue, enforce, or perfect" NF's and each lender's lien on or rights in any collateral.

27. The Event of Default remains unresolved.

28. GPF does business in Illinois over the Internet, via text message, Automated Clearing House transactions, and telephone. Loans are advertised and made through a website (Exhibit A).

29. Defendants John Does 1-20 are other natural or artificial persons involved in the making, underwriting, financing and collection of the GPF loans.

## FACTS RELATING TO PLAINTIFF

30. Plaintiff Frohlich obtained a $700 loan from GPF in January 2024.

31. Plaintiff made payments on the loan.

32. The loan is still outstanding.

5

33. The rate of interest on the loan exceeded 100%.

34. Plaintiff Frohlich does not have a copy of the loan documents. The standard form used by GPF is in <u>Exhibit B</u>. GPF's loan approval to Frohlich is in <u>Exhibit C</u>. A list of payments is in <u>Exhibit D</u>.

35. The loan was obtained for personal, family or household purposes and not for business purposes.

36. Plaintiff was in Illinois at all times. At no time did Plaintiff visit any land belonging to the Tribe. GreatPlains Finance, LLC did business with him via Internet and ACH credits and debits.

## FACTS – GENERAL

37. GPF regularly makes loans to individuals in Illinois at rates over 100%.

38. GPF advertises and makes loans to Illinois residents via the Internet.

39. Plaintiff and other borrowers looked online for lenders and came across GPF by its "Cash Now Advance" tradename. They electronically applied for loans and were contacted by GPF.

40. At no time have Defendants had a license from the Illinois Department of Financial and Professional Regulation or a state or federal banking or credit union charter, entitling them to make loans to Illinois residents at more than 9% interest.

41. Defendants nevertheless advertise and make loans to Illinois residents at rates greatly exceeding 9%.

42. Defendants sought out Illinois residents for such loans.

## ILLINOIS PROHIBITIONS ON PREDATORY LOANS

43. Effective March 23, 2021, the Illinois Predatory Loan Prevention Act made it unlawful for anyone other than a bank to make loans to Illinois residents at annual percentage rates in excess of 36%. 815 ILCS 123/15-1-1 et seq. "Any loan made in violation of this Act is null and void and no person or entity shall have any right to collect, attempt to collect, receive, or retain any

6

principal, fee, interest, or charges related to the loan." 815 ILCS 123/15-5-10.

44. Under 815 ILCS 123/15-10-5(b), "Any violation of this Act, including the commission of an act prohibited under Article 5, constitutes a violation of the Consumer Fraud and Deceptive Business Practices Act."

45. Both before and after March 23, 2021, it was unlawful for anyone who did not have a bank or credit union charter or a consumer lending license issued by the Illinois Department of Financial and Professional Regulation to make loans at more than 9% interest. 205 ILCS 670/1.

46. Any loans to Illinois residents at more than 9% that are made by unlicensed persons are void and unenforceable. 205 ILCS 670/20(d) ("Notwithstanding any other provision of this Section, if any person who does not have a license issued under this [Consumer Instalment Loan] Act makes a loan pursuant to this Act to an Illinois consumer, then the loan shall be null and void and the person who made the loan shall have no right to collect, receive, or retain any principal, interest, or charges related to the loan."),

47. Any loans to Illinois residents at more than 9% that are made by unlicensed lenders violate the Interest Act, 815 ILCS 205/4, and are subject to statutory damages under 815 ILCS 205/6.

48. Illinois has a criminal usury statute defines the making of a loan by unlicensed persons at more than 20% interest as a felony. 720 ILCS 5/17-59 (formerly 720 ILCS 5/39-1 et seq). It applies to a person who "while either within or outside the State, by his own conduct or that of another for which he is legally accountable," engages in conduct that amounts to an offense if "the offense is committed either wholly or partly within the State". 720 ILCS 5/1-5.

49. Contracts made in violation of licensing requirements intended to protect the public, or in violation of criminal laws imposing substantial penalties, are void. *Chatham Foot Specialists, P.C. v. Health Care Serv. Corp.*, 216 Ill. 2d 366, 380, 837 N.E.2d 48 (2005). Neither choice of law clauses or other contractual devices can be used to avoid invalidation of loans made at criminally usurious rates. *Madden v. Midland Funding, LLC,* 11cv8149, 2017 WL 758518, at *11

(S.D.N.Y. Feb. 27, 2017) ("That New York chose to criminalize such conduct is further evidence that its usury prohibition is a fundamental public policy."); *MacDonald v. CashCall, Inc.,* 16cv2781, 2017 WL 1536427, *7 (D.N.J., April 28, 2017).

50. The Illinois Department of Financial and Professional Regulation has repeatedly brought cases against unlicensed out of state tribal and other lenders that make loans via the Internet or similar means to Illinois residents in Illinois. *E.g., In the Matter of Red Leaf Ventures, LLC,* No. 12 CC 569 (https://www.idfpr.com/dfi/ccd/Discipline/RedLeafVenturesCDOrder12CC569.pdf), *In the Matter of Money Mutual, LLC*, No. 12 CC 408 (https://www.idfpr.com/dfi/ccd/Discipline/MoneyMutualCDOrder12CC408.pdf); *In the Matter of Hammock Credit Services*, No. 12 CC 581 (https://www.idfpr.com/dfi/ccd/Discipline/HammockCreditCDOrder12CC581.pdf); *In the Matter of Makes Cents, Inc., d/b/a Maxlend*, No. 17 CC 133 (https://www.idfpr.com/dfi/CCD/Discipline/17CC133%20-%20Make%20Cents%20dba%20Maxlend%20Cease%20and%20Desist%20Order%20Bob%208%2016%202017.pdf)

51. Sovereign immunity, even if legitimately invoked, still does not turn an otherwise illegal loan into a legal one. *See, e.g., United States v. Neff,* 787 F. App'x 81 (3d Cir. 2019) (upholding criminal convictions of two individuals engaged in an online payday lending rent-a-tribe scheme; sovereign immunity does not transform illegal loans into legal ones, and "reasonable people would know that collecting unlawful debt is unlawful").

52. Attempting to circumvent state interest rate caps by fraudulently hiding behind tribal sovereign immunity has been found to constitute criminal conduct. On October 13, 2017, a jury in the U.S. District Court for the Southern District of New York convicted Scott Tucker and Timothy Muir on 14 felony counts for their operation of a network of tribal lending companies. *See United States v. Tucker, et al.*, No. 1:16-cr-00091-PKC (S.D.N.Y). The conviction was affirmed in *United States v. Grote*, 961 F.3d 105 (2d Cir. 2020).

8

## COUNT I - DECLARATORY AND INJUNCTIVE RELIEF AGAINST ILLEGAL CONDUCT

53. Plaintiff incorporates paragraphs 1-52.

54. This claim is against all Defendants.

55. There is a controversy between Plaintiff and the class, on the one hand, and Defendants, on the other, as to whether Plaintiff must repay the loans made to her.

56. Declaratory relief will resolve such controversy.

57. An injunction is necessary to prevent Defendants from taking any action to collect the void debts.

## CLASS ALLEGATIONS

58. Plaintiff brings this claim on behalf of a class, pursuant to Fed.R.Civ.P. 23(a) and (b)(2).

59. The class consists of (a) all individuals with Illinois addresses (b) to whom a loan was made in the name of GreatPlains Finance, LLC at more than 9% interest (c) which loan has not been paid in full.

60. Plaintiff may alter the class definition to conform to developments in the case and discovery.

61. The class is so numerous that joinder of all members is not practicable. On information and belief, based on the making of loans over the Internet using form documents, there are at least 40 class members.

62. There are questions of law and fact common to the class members, which common questions predominate over any questions relating to individual class members. The predominant common questions are whether Defendants engage in a practice of making and attempting to collect illegal loans.

63. Plaintiff will fairly and adequately represent the class members. Plaintiff has retained counsel experienced in class actions and consumer credit litigation.

64. Plaintiff's claim is typical of the claims of the class members. All are based on the same factual and legal theories.

65. Defendant has acted on grounds that apply generally to the class, so that final injunctive relief or corresponding declaratory relief is appropriate.

66. The class is entitled to a declaration that Defendants are not entitled to collect on the loans described, an injunction against any further collection efforts by Defendants, and restitution of all such amounts collected by Defendants.

WHEREFORE, the Court should enter judgment in favor of Plaintiff and the class and against Defendants for:

    i. Injunctive relief;

    ii. Declaratory relief;

    iii. Restitution of all amounts collected on the loans from members of the class;

    iv. Costs of suit; and

    v. Such other and further relief as the Court deems proper.

## COUNT II – ILLINOIS INTEREST ACT

67. Plaintiff incorporates paragraphs 1-52.

68. This claim is against all Defendants.

69. Defendants contracted for and collected loans at more than 9% interest from Plaintiff and the class members, in violation of 815 ILCS 205/4.

70. Plaintiff and the class members are entitled to statutory damages under 815 ILCS 205/6.

## CLASS ALLEGATIONS

71. Plaintiff brings this claim on behalf of a class, pursuant to Fed.R.Civ.P. 23(a) and (b)(3).

72. The class consists of (a) all individuals with Illinois addresses (b) to whom

a loan was made in the name of GreatPlains Finance, LLC at more than 9% interest (c) which loan is still outstanding or has been paid on or after a date two years prior to the filing of suit.

73. Plaintiff may alter the class definition to conform to developments in the case and discovery.

74. The class is so numerous that joinder of all members is not practicable. On information and belief, based on the making of loans over the Internet using form documents, there are at least 40 class members.

75. There are questions of law and fact common to the class members, which common questions predominate over any questions relating to individual class members. The predominant common questions are whether Defendants engage in a practice of making and attempting to collect illegal loans.

76. Plaintiff will fairly and adequately represent the class members. Plaintiff has retained counsel experienced in class actions and consumer credit litigation.

77. Plaintiff's claim is typical of the claims of the class members. All are based on the same factual and legal theories.

78. A class action is superior for the fair and efficient adjudication of this matter, in that:

    a. Individual actions are not economically feasible.

    b. Members of the class are likely to be unaware of their rights.

WHEREFORE, the Court should enter judgment in favor of Plaintiff and the class and against Defendants for:

    i. Damages as provided in 815 ILCS 205/6.

    ii. Attorney's fees, litigation expenses and costs of suit; and

    iii. Such other and further relief as the Court deems proper.

## COUNT III – PREDATORY LOAN PREVENTION ACT
## AND ILLINOIS CONSUMER FRAUD ACT

79. Plaintiff incorporates paragraphs 1-52.

80. This claim is against all Defendants.

81. Defendants contracted for and collected loans prohibited by the Illinois Predatory Loan Prevention Act.

82. Violation of the Predatory Loan Prevention Act is a violation of the Illinois Consumer Fraud Act, 815 ILCS 505/1 et seq.

## CLASS ALLEGATIONS

83. Plaintiff brings this claim on behalf of a class, pursuant to Fed.R.Civ.P. 23(a) and (b)(3).

84. The class consists of (a) all individuals with Illinois addresses (b) to whom a loan was made in the name of GreatPlains Finance, LLC at more than 9% interest (c) which loan was made on or after a date 3 years prior to the filing of suit.

85. Plaintiff may alter the class definition to conform to developments in the case and discovery.

86. The class is so numerous that joinder of all members is not practicable. On information and belief, based on the making of loans over the Internet using form documents, there are at least 40 class members.

87. There are questions of law and fact common to the class members, which common questions predominate over any questions relating to individual class members. The predominant common questions are whether Defendants engage in a practice of making and attempting to collect illegal loans.

88. Plaintiff will fairly and adequately represent the class members. Plaintiff has retained counsel experienced in class actions and consumer credit litigation.

89. Plaintiff's claim is typical of the claims of the class members. All are

12

based on the same factual and legal theories.

      90.    A class action is superior for the fair and efficient adjudication of this matter, in that:

           a.    Individual actions are not economically feasible.

           b.    Members of the class are likely to be unaware of their rights;

WHEREFORE, the Court should enter judgment in favor of Plaintiff and the class and against Defendants for:

           i.    Compensatory damages;

           ii.    Punitive damages;

           iii.    Attorney's fees, litigation expenses and costs of suit; and

           iv.    Such other and further relief as the Court deems proper.

## COUNT IV – RICO

      91.    Plaintiff incorporates paragraphs 1-52.

      92.    This claim is against Defendants NF and John Does 1-20, who are the RICO "persons."

      93.    All loans made in the name of GreatPlains Finance, LLC to Illinois residents are (a) unenforceable under Illinois law in whole or in part as to principal or interest because of the laws relating to usury, and (b) were incurred in connection with the business of lending money at a rate usurious under Illinois law, where (c) the usurious rate is at least twice the enforceable rate (9%).

      94.    The loans are therefore "unlawful debts" as defined in 18 U.S.C. §1961(6).

      95.    GreatPlains Finance, LLC is an enterprise affecting interstate commerce, in that it is located outside of Illinois and makes loans to Illinois residents via the Internet.

      96.    Defendant NF is associated with this enterprise, in that it was responsible for funding it and directed and supervised the making of loans to Illinois residents and their collection.

      97.    Defendants John Does 1-20 are also associated with this enterprise.

      98.    Defendants NF and John Does 1-20 conducted or participated in the conduct of the affairs of GreatPlains Finance, LLC through a pattern of collection of unlawful debt,

as set forth above, in violation of 18 U.S.C. §1962(c).

99. Plaintiff was deprived of money as a result.

## CLASS ALLEGATIONS

100. Plaintiff brings this claim on behalf of a class pursuant to Fed.R.Civ.P. 23(a) and (b)(3).

101. The class consists of (a) all individuals with Illinois addresses (b) to whom a loan was made in the name of GreatPlains Finance, LLC at more than 9% interest (c) which loan was made on or after a date 4 years prior to the filing of suit.

102. The class is so numerous that joinder of all members is not practicable. On information and belief, based on the making of loans over the Internet using form documents, there are at least 40 class members.

103. There are questions of law and fact common to the class members, which common questions predominate over any questions relating to individual class members. The predominant common questions are:

    a. Whether the loans at issue are "unlawful debts" as defined in RICO.

    b. Whether GreatPlains Finance, LLC is an "enterprise."

    c. Whether Defendants are associated with GreatPlains Finance, LLC.

    d. Whether Defendants conducted or participated in the affairs of GreatPlains Finance, LLC through a pattern of making and collecting unlawful loans.

104. Plaintiff will fairly and adequately represent the class members. Plaintiff has retained counsel experienced in class actions and consumer credit litigation.

105. Plaintiff's claim is typical of the claims of the class members. All are based on the same factual and legal theories.

106. A class action is superior for the fair and efficient adjudication of this matter, in that:

    a. Individual actions are not economically feasible.

    b. Members of the class are likely to be unaware of their rights.

WHEREFORE, the Court should enter judgment in favor of Plaintiff and the class and against Defendants for:

      i.    Treble damages;

      ii.    Attorney's fees, litigation expenses and costs of suit; and

      iii.    Such other or further relief as the Court deems proper.

*/s/ Daniel A. Edelman*
Daniel A. Edelman

Daniel A. Edelman
Dulijaza (Julie) Clark
Alexandra Huzyk
**EDELMAN, COMBS, LATTURNER & GOODWIN, LLC**
20 South Clark Street, Suite 1800
Chicago, IL 60603-1841
(312) 739-4200
(312) 419-0379 (FAX)
Email address for service:  courtecl@edcombs.com
Email address for service:  courtecl@edcombs.com
Dedelman@edcombs.com
Jclark@edcombs.com
ahuzyk@edcombs.com

## **JURY DEMAND**

Plaintiff demands trial by jury.

>                            */s/ Daniel A. Edelman*
>                            Daniel A. Edelman

## **NOTICE OF LIEN AND ASSIGNMENT**

      Please be advised that we claim a lien upon any recovery herein for 1/3 or such amount as a court awards. All rights relating to attorney's fees have been assigned to counsel.

*/s/ Daniel A. Edelman*
Daniel A. Edelman